**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AIR EVAC EMS, INC.,

                       Plaintiff,

v.                                     CIVIL ACTION NO.   2:21-cv-00105

JAMES A. DODRILL,

                       Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Complaint for Declaratory, Injunctive, and Emergency Relief* (Document 1), the Plaintiff's *Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 3), the *Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction* (Document 4), *Defendant West Virginia Insurance Commissioner's Memorandum in Response to Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 17), and the Plaintiff's *Reply in Support of Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 18), as well as all exhibits.

In addition, the Court has reviewed *Defendant West Virginia Insurance Commissioner's Motion for Leave to File Surreply Memorandum* (Document 19), the attached *Defendant's Surreply Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 19-1), and the Plaintiff's

*Opposition to Motion for Leave to File Surreply* (Document 20). Because the Defendant's response brief raised the issues of standing, ripeness, and abstention, and the Plaintiff's reply contained new arguments regarding those issues, the Court finds that the sur-reply should be permitted to provide full opportunity for both parties to advance their arguments.[1]

## FACTUAL BACKGROUND[2]

The Plaintiff, Air Evac EMS, Inc. (Air Evac), is an emergency air ambulance provider operating throughout the United States, including in West Virginia. It is a federally regulated air carrier. The Defendant, James A. Dodrill, is West Virginia's Insurance Commissioner.

In accordance with federal and state law, Air Evac responds and provides transport when dispatched by first responders, hospitals, or physicians and provides its services without regard to a patient's ability to pay or insurance status. Air ambulance services are quite expensive, and insurance does not always reimburse for the full cost. Air Evac "offers a prepaid, discounted Membership Program to both individual West Virginia residents and to West Virginia businesses and municipalities." (Compl. at ¶ 3.) Participation in the Membership Program costs less than $100 for an individual, covering all members of the household. Businesses, municipalities, and counties also participate in the Membership Program on behalf of employees or residents. Air Evac cancels any portion of a bill that is not covered by insurance for anyone covered by a membership who is transported by Air Evac. The membership fees are held by a parent company, which expends funds for general operations, including fuel, payroll, and maintenance. Anyone

---

[1] The Court appreciates the efforts by counsel on both sides in providing thorough, well-reasoned briefing within brief time frames, which greatly assisted the Court in providing prompt resolution of the motion for preliminary relief.
[2] The Court has noted any factual disputes. Because both parties have submitted evidence and argument, and there are no factual disputes that are material to the resolution of the motion for a preliminary injunction, the Court finds that a hearing would not assist in resolution of the motion.

enrolled in the Membership Program is covered as to Air Evac and its sister companies, which operate in other states.   When a member is transported, the company providing the transport cancels any bill in excess of insurance coverage.   No funds are transferred between the companies following a member transport.   The Membership Program provides no coverage for transport by unaffiliated air ambulance providers, and members who require transport have no ability to control which company provides the service.   Air Evac describes the program as a partial prepayment, or a debt cancellation agreement.

The Offices of the Insurance Commissioner (OIC) held an investigative hearing on February 6, 2020, during which Air Evac cooperated but presented its position that the Airline Deregulation Act of 1978 (ADA) preempts any state law applicable to the Membership Program. Air Evac continued to object while complying with discovery requests.   On December 29, 2020, the OIC "filed an administrative complaint against Air Evac seeking penalties and a cease-and-desist order" to prevent Air Evac from offering the Membership Program.   (Compl. at ¶5.)   The OIC alleges violations of the Unauthorized Insurers Act based on its characterization of the Membership Agreements as insurance policies.   (*See* Administrative Complaint, Doc. 1-2.)   Air Evac is not licensed to provide insurance in West Virginia.   The OIC has scheduled a hearing on its efforts to apply insurance regulations to Air Evac's Membership Program for March 2, 2021, to be presided over by Mr. Dodrill.   Application of insurance regulations to Air Evac would subject it to fines and penalties, as well as require the termination of the Membership Program unless and until Air Evac could meet the regulatory requirements applicable to insurers in West Virginia.

3

The OIC's regulatory efforts follow previous state attempts to regulate Air Evac and its Membership Program.   State officials, including Mr. Dodrill, have expressed concerns regarding the pricing and balance billing of air ambulance services.   A previous effort to impose limits on the reimbursement rates through the PEIA (the West Virginia Public Employees Insurance Agency) resulted in an injunction.   The OIC communicated with HealthNet, a not-for-profit air ambulance network in competition with Air Evac, regarding potential avenues for regulation, including its current consideration of the application of insurance regulations to the Membership Program.   Mr. Dodrill indicates that the investigation was initiated following a complaint by HealthNet.

Air Evac seeks declaratory and injunctive relief based on ADA preemption.

## STANDARD OF REVIEW

Rule 65(b)(1) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be issued without notice

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).   A preliminary injunction may be issued "only on notice to the adverse party."   Fed. R. Civ. P. 65(a)(1).   The Defendant has appeared and responded in this matter.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).   Plaintiffs must satisfy all four requirements.   *JAK*

4

*Prods., Inc. v. Bayer*, 616 F. App'x 94, 95 (4th Cir. 2015) (unpublished, per curiam opinion); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *cert. granted, judgment vacated,* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), and *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). The standard requires the plaintiff "to make a clear showing of likelihood of success on the merits." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292 (4th Cir. 2011) (quotation marks omitted). The final two factors, "assessing the harm to the opposing party and weighing the public interest…merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

Air Evac seeks injunctive relief to prevent the Defendant from subjecting it to regulatory action related to operation of the Membership Program.   It contends that the ADA preempts state regulation of its pricing, routes, and services.   It argues that the Membership Program is not properly classified as insurance for purposes of federal law, and even if it were, the ADA's broad preemption provision would apply.   Air Evac therefore contends that it is likely to succeed on the merits.   It further argues that it would be irreparably harmed by being improperly subjected to state regulation.   Should the Defendant take enforcement action, Air Evac states that it would be forced to cease offering its Membership Program, losing an important source of revenue as well as relationships with customers that may be difficult to regain should it ultimately prevail.   Air Evac contends that the state would suffer no harm by being precluded from enforcing the insurance regulations pending resolution of the preemption issue.   Finally, Air Evac argues that the public

interest favors upholding Congress's intent in preempting state regulation of air carriers, as well as preserving public access to affordable air ambulance services and the Membership Program.

The Defendant argues that Air Evac's claim should be dismissed pursuant to *Younger* abstention because it will have the opportunity to present its arguments during the state administrative proceedings.   He further argues that Air Evac lacks standing because the Commissioner has not yet determined whether the Membership Program is insurance subject to regulatory enforcement.   For the same reason, he argues that the dispute is not ripe.   Should the Court reach the merits, the Defendant contends that Air Evac is not likely to succeed on the merits because federal law reserves insurance regulation to the states except where federal law specifically relates to insurance.   The Defendant asserts that the applicable question is whether the Membership Program is insurance as defined by West Virginia law.   He further contends that the remaining factors do not support preliminary relief, focusing on the hearing itself rather than the impacts of potential regulatory actions that could occur depending on the outcome of the hearing.   The Defendant further cites the public interest in appropriate enforcement of state law.

In reply, Air Evac argues that a pre-enforcement challenge to an imminent enforcement action is ripe and provides standing.   It further argues that abstention is not appropriate because formal enforcement has not yet commenced, and abstention is an extraordinary remedy disfavored where the federal interest is weighty in comparison to the state interest.   In addition, Air Evac contends that abstention is inappropriate because of the Defendant's bias.   The Defendant filed a sur-reply, reiterating some of its previous arguments and contesting the allegation that he had prejudged the outcome of the enforcement action or otherwise behaved inappropriately.

A.  *Standing and Ripeness*

The Supreme Court has established three elements necessary for constitutional standing: (1) "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, punctuation, and citations omitted).  Plaintiffs must support each element "with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at 561.  Where the plaintiff is "an object of the action (or foregone action) at issue…there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."  *Id.* at 561–62.  A plaintiff may have standing prior to the culmination of an enforcement action based on the future injury if there is a "credible threat of enforcement," or "under circumstances that render the threatened enforcement sufficiently imminent."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160, 167 (2014).

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149 (1967)).  "Determining whether administrative action is ripe for

judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* The Fourth Circuit has explained that "[t]he doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form." *Miller v. Brown,* 462 F.3d 312, 318–19 (4th Cir.2006) (internal quotation marks omitted). "To determine if a case is ripe, we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013) (internal quotation marks omitted).

The Defendant's arguments for both standing and ripeness rest on the same premise: that until enforcement action is taken, subjecting Air Evac to penalties should it fail to comply with state insurance regulations or cease offering its Membership Program, there is no case or controversy. The issues presented herein are not remote, abstract, speculative, or otherwise unfit for judicial review. The core question of whether the ADA preempts state efforts to regulate Air Evac's Membership Program is quite clear, and all factual and legal development necessary to resolve that question is available to the parties. It is likewise quite clear that the Defendant is attempting to exercise regulatory authority over Air Evac. Air Evac is not required to wait until it is faced with penalties or a final order to shut down its Membership Program to seek to vindicate its asserted rights under federal law. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392, *certified question answered sub nom. Commonwealth v. Am. Booksellers Ass'n, Inc.*, 372 S.E.2d 618 (Va. 1988) ("[the injury]

8

requirement is met here, as the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution.").

In short, Air Evac has alleged, and supplied supporting documentation, that it is imminently threatened with penalties and other enforcement measures that would reduce its revenue and interfere with its relationship with customers.   The Administrative Complaint, scheduled hearing, and surrounding circumstances establish a credible threat of enforcement.   The Defendant's proposed enforcement measures, detailed in the Administrative Complaint, would cause the harm at issue, and a favorable decision finding state enforcement to be preempted by federal law would redress the imminent injury.   Thus, the Court finds that Air Evac has sufficiently established standing.

For the same reasons, the Court finds that Air Evac's claim is ripe for adjudication.   The issues presented are concrete.   The legal question may be evaluated in view of the detailed factual description of the Membership Program, Air Evac's business model, Air Evac's undisputed status as an air carrier subject to the ADA, and the Defendant's preliminary steps toward enforcement. Delaying resolution of the straightforward federal preemption issue would impose significant hardship on both parties.   Air Evac would be forced to submit to the state regulatory process that it contends Congress intended to protect air carriers from by establishing a federal regulatory framework for airlines, and the Defendant would continue to expend resources attempting to regulate an entity and program that may be outside its purview.   Therefore, the Court finds that the matter is ripe for judicial review.

### B.  Abstention

In *Younger v. Harris*, the Supreme Court held that a federal court must generally abstain from enjoining state criminal prosecutions challenged on constitutional grounds.  *Younger v. Harris*, 401 U.S. 37, 43 (1971).  In addition to state criminal prosecutions, *Younger* abstention has been extended to "particular state civil proceedings that are akin to criminal prosecutions" and proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).  Where a proceeding is akin to a criminal prosecution, abstention is appropriate if it is "an ongoing state judicial proceeding," "the proceedings implicate important state interests," and "there is an adequate opportunity in the state proceedings to raise constitutional challenges."  *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The Supreme Court has cautioned lower courts that "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts" and abstention applies only in "exceptional circumstances."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 372–73 (1989).  "In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction.  Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."  *Sprint Commc'ns*, 571 U.S. at 72.

The parties focused primarily on whether the state action is quasi-criminal and whether it constitutes an ongoing proceeding.  The Supreme Court provided some guidance as to the type of civil enforcement actions that could be considered "akin to a criminal prosecution," noting that "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the

party challenging the state action, for some wrongful act." *Id.* at 79.   "[A] state actor is routinely a party to the state proceeding and often initiates the action." *Id.*   "Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* at 79–80.

The Court finds that enforcement actions alleging violations of the Unauthorized Insurers Act are akin to a criminal proceeding.   The OIC, a state actor, filed an Administrative Complaint following an investigation.   The Administrative Complaint alleges wrongdoing—the unauthorized transaction of insurance—and seeks a cease and desist order and the imposition of fines.   The March 2, 2021 hearing would involve evaluation of the evidence and allegations, after which the Commissioner would issue findings and conclusions, and could issue a cease and desist order, fines, or other civil remedies.   Any order may be challenged in state court.

The Court further finds that the proceeding, although in an early stage, is ongoing.   Air Evac relies on cases finding that "*Younger* abstention is not appropriate before formal enforcement has commenced."   (Pl.'s Reply at 4.)   The Fourth Circuit has held that *Younger* abstention is not "required whenever a state bureaucracy has initiated contact with a putative federal plaintiff" but "no formal enforcement action has been undertaken." *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989).   In that case, the state agency at issue conducted informal meetings with the federal plaintiff, but "never initiated a formal hearing" or "request[ed] a formal prosecution." *Id.* at 1228 (noting that Virginia law distinguishes between informal and formal proceedings).   A recent Third Circuit case, finding abstention inapplicable as to a plaintiff under audit for failure to pay employment taxes for allegedly misclassified employees, reviewed a number of cases concluding that an investigation does not constitute an ongoing proceeding. *PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 886–87 (3d Cir.

11

2020).   However, in this case, the OIC filed a formal Administrative Complaint and the Commissioner scheduled a formal adjudicative hearing.   It is that hearing and the potential negative findings, orders, and fines that may result which Air Evac asks this Court to enjoin.   *See, e.g.*, *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 196 (1st Cir. 2015) (finding an ongoing proceeding where the agency "completed an investigation, issued a formal complaint, conducted a pre-hearing conference, and scheduled an adjudicative hearing").

Air Evac contends that abstention is improper because the Defendant "has prejudged the outcome of the state administrative proceeding" and will not provide a disinterested tribunal. (Pl.'s Reply at n. 1.)   The Defendant contests the allegations that he personally directed the investigation or improperly consulted a competing air ambulance provider.

The Supreme Court has noted that abstention may be inappropriate if "there is a showing of bad faith, harassment, or some other extraordinary circumstance."   *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).   In *Younger* itself, the Supreme Court explained that the abstention would be improper where the prosecution at issue threatened irreparable harm beyond that inherent in a criminal prosecution or where the federal plaintiff made a substantial showing that the state officials were operating in bad faith, without an expectation of gaining valid convictions.   *Younger v. Harris*, 401 U.S. 37, 47–48 (1971).   The Fourth Circuit has found that "[t]he doctrine has always involved some interplay between concepts of comity and the need for protection of constitutional rights" and discouraged an interpretation of *Younger* that "would allow any state agency to persist in conduct that is patently unconstitutional."   *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229–30 (4th Cir. 1989).   The Fourth Circuit has also indicated that the weight of the federal interest at stake may play a role in determining whether

abstention is appropriate.   *Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 356 (4th Cir. 2005) ("When there is an overwhelming federal interest—an interest that is as much a core attribute of the national government as the list of important state interests are attributes of state sovereignty in our constitutional tradition—no state interest, for abstention purposes, can be nearly as strong at the same time.").   More broadly, "[a]bstention is not necessarily appropriate in every civil action that meets the formal requirements of the *Younger* doctrine" if extraordinary circumstances counsel against abstention.   *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 251–52 (4th Cir. 1993).

The Court finds that this case presents such an extraordinary circumstance.   As an initial matter, while the formal requirements of *Younger* may be present, the infringement on the state action is minimal.   The Commissioner has noticed a formal hearing, which the Court found to be sufficient to initiate a proceeding, but the state proceeding remains in its earliest stages, such that halting it imposes only a minimal, if any, burden on the Commissioner.   Although regulation of insurance is an important state interest, the questions presented in the federal forum are questions of federal law well-suited to federal resolution.

The timeline of the Commissioner's investigation and move toward seeking to enforce insurance regulation as to Air Evac's Membership Program is troubling.   In emails in June and July 2019, Mr. Doddrill communicated with officials at Health Net, a competitor air ambulance provider, stating "I wanted to let you know that I am considering whether to take action which could include issuance of a cease and desist order finding that the agreements already issued in WV are unapproved insurance products sold by unlicensed insurers/agents," later noting that "[w]e know this will draw litigation."   (Pl.'s Ex. C).   The emails mix discussion of regulation of the

Membership Program as insurance with discussion regarding efforts to curtail balance billing.   An OIC employee reached out to a HealthNet vice president to obtain copies of Air Evac's membership contracts.   (Pl.'s Ex. K.)   These communications suggest that the Plaintiff may be able to establish bad faith.   Because the Court finds that Air Evac is likely to succeed on the merits as to abstention on more objective grounds, it is unnecessary to further explore the Commissioner's motivation.

The Fourth Circuit issued its opinion in *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018) on December 7, 2018.   In introduction, the court explained:

> Beginning in 2011, West Virginia enacted various laws to limit the reimbursement rates of air ambulance companies. Air Evac, an air ambulance company and registered air carrier, sued to enjoin the enforcement of these provisions, arguing that the state's laws were preempted by the ADA. The district court agreed with Air Evac and enjoined the challenged provisions. We now affirm.

*Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 755 (4th Cir. 2018).   The West Virginia Insurance Commissioner was one of the parties in *Cheatham*.   This Court, affirmed by the Fourth Circuit, enjoined state attempts to regulate Air Evac's pricing structure—including "a law stating that the [state Public Employee Insurance Agency] will not reimburse any air ambulance costs for covered employees who entered into a separate subscription agreement with an air ambulance provider like Air Evac."   *Id.* at 758.   Only months later, the OIC initiated its investigation into another method of regulating Air Evac's pricing and compensation structure.   Its actions smack of gamesmanship, and its efforts to keep the matter in state courts that, while capable, lack the federal courts' recent familiarity with the precise issues presented, should not be rewarded.   The federal interest in enforcement of federal law is heightened in these circumstances, where an unsuccessful litigant seeks to tweak its case and present it in a forum it hopes will prove more favorable.   While not

14

factually identical to a prior case, the facts here fit the pattern for the type of cases in which courts have found abstention inappropriate.

In addition, as will be discussed in more detail *infra*, Air Evac would likely suffer irreparable harm if an injunction preserving its federal rights is not entered.   Shutting down the Membership Program could cause it to lose both individual customers and municipal and county participants while it awaits consideration of its preemption claims, and rebuilding those relationships following a state enforcement action could be impossible.   Therefore, following careful consideration, the Court finds that Air Evac is likely to succeed in overcoming a challenge based on *Younger* abstention.

### C. Preemption

The ADA contains a broad preemption provision: "a State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. §4173(b)(1).   The Supreme Court has explained that the phrase 'relating to,' in its ordinary meaning, is broad, and "the words thus express a broad preemptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding state truth in advertising rules were preempted).   "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted." *Id*. at 384.   A state law claim for breach of the implied covenant of good faith and fair dealing "is preempted if it seeks to enlarge the contractual obligations that the parties voluntarily adopt." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 276 (2014) (challenge to termination from frequent flier program).   However, "the ADA permits state-law-based court adjudication of routine breach-of-contract claims," "affording relief to a party who

claims and proves that an airline dishonored a term the airline itself stipulated" as distinct from claims for relief based on "what the State dictates."  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995).

In *Cheatham*, the Fourth Circuit considered two state provisions.   In one, the West Virginia OIC sought to set reimbursement rates for air ambulance services for insurers within the state workers' compensation system.  *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 758 (4th Cir. 2018).   The other sought to eliminate any payment by PEIA for employees who were enrolled in a subscription agreement with the air ambulance provider, like the Membership Program, to "effectively cap[] the reimbursement at the subscription price."  *Id.*   The court easily concluded that "[t]he challenged West Virginia laws clearly have a connection to air ambulance prices," and noted that "[t]he regulatory scheme only exists because West Virginia was attempting to lower payments for air ambulance services."  *Id.*   at 767.   The Fourth Circuit concluded that "the ADA's preemption provision limits the options available to the states," but that a state "may still exert its considerable market power to obtain more favorable terms," and that "Congress's decision to subject air transportation to only one layer of regulation was accompanied by a commitment to work with state governments in developing uniform national policy."  *Id.* at 770.

The effort to regulate Air Evac's Membership Program clearly relates to a price of an air carrier providing air transportation.   The Membership fees help fund operating costs for Air Evac and its sister providers, and any balance billing for Members who are transported by Air Evac or its sister providers is cancelled.   Limiting the program would both limit a source of revenue that contributes to the cost of providing flights and would impact the charges levied on consumers.

The Defendant argues that the ADA preemption is negated by the McCarran-Ferguson Act (MFA) because it seeks only to regulate the business of insurance.   The MFA provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."   15 U.S.C. §1012(b).

Several courts have considered arguments that state regulations or statutes that would otherwise be preempted by the ADA are saved by the MFA.   The Eleventh Circuit held that the MFA did not interfere with ADA preemption of an effort to apply a state law provision that barred medical providers from billing an insured for amounts in excess of reimbursement limits contained in a rate schedule.   *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1262–63 (11th Cir. 2018).   The court noted that the MFA "is to be narrowly construed in the face of valid federal regulatory interests."   *Id.* at 1273 (quoting *Cochran v. Paco, Inc.*, 606 F.2d 460, 467 (5th Cir. 1979)).   It reasoned that the balance billing provision impacted charges imposed on an insured by a medical provider but did not relate to insurance policies or the relationship between the insurer and insured.   *Id.* at 1274.   The Tenth Circuit found that a state statute and fee schedule setting rates for reimbursement for claims covered by the workers' compensation system was preempted by the ADA and not saved by the MFA because it did not regulate the business of insurance. *EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017).   In a case currently under consideration on appeal to the Eighth Circuit, a district court found that a state provision "which prohibits air ambulance providers from selling subscription agreements…was clearly enacted 'for the purpose of regulating the business of insurance'" and was therefore saved from preemption by the MFA.   *Guardian Flight, LLC v. Godfread*, 359 F. Supp. 3d 744, 760–61 (D.N.D. 2019).

17

Air Evac questions the premise that the MFA can supersede the broad preemption provision contained in the ADA.   Because the Court finds that Air Evac is likely to succeed on its alternative theory that the Defendant's enforcement threat against the Membership Program does not involve regulation of the business of insurance, within the meaning of the MFA, it is unnecessary to resolve the scope of the MFA reverse-preemption provision in the context of the ADA.

The Supreme Court has established "three criteria relevant in determining whether a particular practice is part of the 'business of insurance:'" "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."   *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982) (addressing the MFA provision applicable to antitrust laws).   The Court has further emphasized "that the focus of McCarran-Ferguson is upon the relationship between the insurance company and its policyholders."   *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 501, (1993).   However, the scope of laws "enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance," and is broader than the "business of insurance" itself, resulting in broader construction of the term for purposes of the antitrust provision of the MFA than for the preemption provision.    *Id.* at 505; *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 294 (4th Cir. 2007) ("the McCarran-Ferguson Act confers more commerce power to the States than is necessary simply to regulate the business of insurance directly").

Air Evac's membership program shares some characteristics with insurance.   It has the effect of spreading a policyholder's risk, in that a participant pays a small fee in return for

cancellation of a larger debt in the event the participant requires air transport by Air Evac or one of the affiliate companies.   The second MFA factor, whether the regulated practice is "an integral part of the policy relationship," is less clear under the facts presented.   The Defendant does not challenge any particular aspect of the Membership Plan, but instead challenges Air Evac's ability to offer it at all, absent authorization as an insurer.   Without answering the preliminary question of whether the Membership Plan is insurance, the second factor has little relevance.   The third factor asks whether the practice is limited to entities within the insurance industry.   Membership or subscription plans similar to that offered by Air Evac, involving prepayment or debt cancellation, are not limited to the insurance industry.   Air Evac proffers that ground ambulance companies offer similar programs.   Although the payment and provider model is different, auto club memberships offer benefits like towing and roadside service in the event a member experiences a breakdown.   Similarly, home and other extended warranties cover the expense of repairing or replacing appliances and other items even when that expense exceeds the cost of the warranty.

Judge Copenhaver recently considered the question of whether Air Evac's Membership Program constitutes insurance.   *Hundley v. Air Evac EMS, Inc.*, No. 2:16-CV-12428, 2019 WL 1428691 (S.D.W. Va. Mar. 29, 2019).   He found that the matter could not be resolved on a motion to dismiss without further factual development, explaining that it would turn on "whether AirMedCare indemnifies [a] member's debts owed to the individual transporters" or whether members' debts are directly cancelled by each affiliated air ambulance provider.   *Id.* at *4.

Air Evac has supplied declarations from officials involved in the Membership Program. David Satterfield is the Director of Accounting for Global Medical Response, Inc., the parent

company of Air Evac and the other providers.   He states that membership fees are "swept into a 'concentration' account maintained by Global Medical Response" which contains revenue from multiple sources."   (Satterfield Dec. at ¶ 4, Pl.'s Ex. 1) (Doc. 3-1.)   "On a monthly basis, membership fees are credited to the ledger account of the Provider that operates in the geographic region where a given membership was purchased" and "are not pooled or placed in a reserve fund of any kind."   (*Id.* at ¶ 5.)   No cash payment or transfer is made when a member is transported, whether the member is transferred by the provider within his or her home geographical region or by another provider in another region.   (*Id.* at ¶ 6.)

Brandi Jordan, the Senior Project Manager for the AirMedCare Network membership program, provided a declaration stating that the Membership Program, by its terms, does not provide indemnification.   (Jordan Dec. at ¶ 17, Pl.'s Ex. 2.) (Document 3-2.)   She further explains that individual members are automatically enrolled in the membership program for all affiliated providers, and any transport costs not covered by insurance are cancelled if the individual member is transported by any provider within the AirMedCare Network.   (*Id.* at ¶9.)   Group memberships purchased by counties and municipalities on behalf of residents, however, are typically limited to a specified geographical range.   (*Id.* at ¶ 10.)

The Defendant has presented nothing to counter Air Evac's evidence that the Membership Program provides only debt cancellation and no indemnification.   The McCarran Ferguson Act applies only to regulation of the business of insurance.   Air Evac is likely to prevail in demonstrating that its Membership Program is not insurance, and therefore that any state regulation of it is preempted by the ADA.   There is significant precedent, as previously outlined, including *Cheatham*, concluding that regulation of balance billing from air ambulance companies

is preempted by the ADA. The Defendant's efforts to employ a broad definition of "insurance" to reach Air Evac's program offering prepayment or debt cancellation of balance billing is unlikely to alter that outcome.

### D. Irreparable Harm

In the absence of injunctive relief, Air Evac will be forced to submit to further state investigation of and enforcement against its Membership Program. In the event the Commissioner concludes that Air Evac has violated the Unauthorized Insurers Act—which the Court finds to be likely given the progress of the investigation to date and the Defendant's positions herein—Air Evac could be subject to fines and a cease and desist order. Any interruption in its ability to offer the program will cause the loss of revenue and damage its relationships with customers, including large county and municipal customers. The employees responsible for marketing and managing the Membership Program would likely be laid off. Regaining customers for a program that was previously shut down by the state, even if improperly, would likely prove difficult. Therefore, the Court finds that Air Evac has established that it is likely to suffer irreparable harm in the absence of preliminary relief.

### E. Balance of Equities and Public Interest

While the Defendant and the public have an interest in the appropriate regulation of insurance, the Plaintiff's interest in the uninterrupted continuation of its Membership Program and in protecting its right to preemption under the ADA heavily outweighs that interest. An injunction simply requires the Defendant to delay any enforcement efforts pending resolution of the federal questions regarding his legal ability to proceed. The public interest likewise supports an

21

injunction to preserve the status quo while the parties and courts address the legal status of the Membership Program and the interaction between the McCarran Ferguson Act and the ADA.

The Defendant's motivations are somewhat puzzling in this case.  The background and some of the emails suggest ongoing state concern regarding balance billing by Air Evac and other air ambulance providers, which leaves customers with unexpected large bills following accidents or emergencies requiring the services of an air ambulance.  The Membership Program provides an avenue for consumers, as well as businesses, municipalities, and counties, to protect against balance billing when transported by Air Evac.  Numerous court rulings preclude any state limitation on balance billing by air ambulance providers under the ADA.  Cessation of the program would leave customers who receive transport services by Air Evac or its sister providers to foot the bill in the continuing absence of federal regulation.  Accordingly, the Court finds that the balance of equities and the public interest favor injunctive relief.

## CONCLUSION

Wherefore, following thorough review and careful consideration, the Court **ORDERS** that *Defendant West Virginia Insurance Commissioner's Motion for Leave to File Surreply Memorandum* (Document 19) be **GRANTED** and that the attached *Defendant's Surreply Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 19-1) be **FILED**.  The Court further **ORDERS** that the Plaintiff's *Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction* (Document 3) be **GRANTED**.

22

## PRELIMINARY INJUNCTION

The Court **ORDERS** that the Defendant, James Dodrill, Commissioner of Insurance for the State of West Virginia, be **ENJOINED** from enforcing the Licensing Laws, W.VA. Code §§ 33-1-1; 33-3-1- and 33-44-1 *et. seq.,* against the Plaintiff, Air Evac, during the pendency of this case.

In light of the Court's findings regarding the absence of any meaningful harm to the Defendant related to this injunction preserving the status quo, as well as the high likelihood that the Plaintiff will prevail on the merits, the Court **ORDERS** that the security required by Federal Rule of Civil Procedure 65(c) be set at **ZERO**. *See, e.g., Doe v. Pittsylvania Cty., Va.*, 842 F. Supp. 2d 927, 937 (W.D. Va. 2012).

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:     March 1, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA