**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AIR EVAC EMS, INC.,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:21-cv-00105

ALLAN L. MCVEY,

                Defendant.

**ORDER**

Pending before the Court are cross-motions for summary judgment.   (ECF Nos. 48, 50.) One of the critical issues posed in these motions is whether West Virginia Code § 33-11B-1 (the "State Statute") is saved from preemption under the Airline Deregulation Act ("ADA") by what is known as reverse preemption through the McCarren-Ferguson Act ("MFA").   However, the parties utilized the wrong standard for MFA reverse preemption in their briefs.

To determine whether reverse preemption under the MFA is applicable, the Court first looks to the relevant language from the MFA.   Section 2(b) of the MFA is relevant and contains two clauses.

The first clause states as follows:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating *the business of insurance*, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

15 USC § 1012(b) (emphasis added).   This first clause enables state law to supersede or reverse-

preempt federal law.

The second clause states as follows:

[A]fter June 30, 1948, . . . the Sherman Act, . . . the Clayton Act, and . . . the Federal Trade Commission Act, as amended, shall be applicable to *the business of insurance* to the extent that such business is not regulated by State law.

*Id.* (emphasis added).   This second clause exempts the business of insurance, not the business of insurance companies, from federal antitrust law when state antitrust law applies.

Although both clauses include similar "business of insurance" language, different tests are used in determining whether each respective clause is applicable in a given case.

For the *second* clause, the Supreme Court identified three factors to determine what practices constitute "the business of insurance" in the antitrust context: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry."  *Group Life & Health Ins. Co. v. Royal Drug Co.*  440 U.S. 205 (1979) (holding that the challenged agreements between an insurance company and certain pharmacies were not "the business of insurance" under the second clause of § 2(b) of the MFA).   A few years later, the *Pireno* Court confirmed those three factors as the test to determine whether a practice was "the business of insurance" under the second clause. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 122 (1982) (holding that a health insurer's use of a peer review committee to determine the necessity for treatments and reasonableness of charges did not constitute the "business of insurance" under the second clause of § 2(b) of the MFA).

For the *first* clause, the Supreme Court later identified a different test to determine whether

2

a law was enacted "for the purpose of regulating the business of insurance" in the reverse preemption context. *United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 504 (1993). ("Both *Royal Drug* and *Pireno* . . . involved the scope of the antitrust immunity located in the second clause of § 2(b)," but "[w]e deal here with the first clause").   Specifically, the *Fabe* Court used a three-part test to determine whether a state statute could be reverse preempted under the first clause of Section 2(b) of the MFA: (1) does the federal statute at issue "specifically relate to the business of insurance;" (2) was the state statute at issue "enacted for the purpose of regulating the business of insurance;" and (3) would application of the federal statute "invalidate, impair or supersede" the state statute.   *See id.* at 501; *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) ("The [MFA] thus precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law.").

Although the *Fabe* Court determined that the statute at issue satisfied the "*Pireno* test," it distinguished *Royal Drug* and *Pireno* on the basis that they "involved the scope of the antitrust immunity located in the second clause of § 2(b)," which is much more "narrowly circumscribed" than the first clause of § 2(b):

> The language of § 2(b) is unambiguous: the first clause commits laws "enacted . . . for the purpose of regulating the business of insurance" to the States, while the second clause exempts only "the business of insurance" itself from the antitrust laws. To equate laws "enacted . . . for the purpose of regulating the business of insurance" with the "business of insurance" itself, as petitioner urges us to do, would be to read words out of the statute. This we refuse to do.

*Fabe,* 508 U.S. at 504.   Then, the Court articulated the standard by which to interpret the phrase "enacted . . . for the purpose of regulating the business of insurance" in the first clause of § 2(b):

> The broad category of laws enacted "for the purpose of regulating the business of

insurance" *consists of laws that possess the "end, intention or aim" of adjusting, managing, or controlling the business of insurance.* Black's Law Dictionary 1236, 1286 (6th ed. 1990). *This category necessarily encompasses more than just the "business of insurance."*

*Id.* at 505 (emphasis added).

As such, the Supreme Court has articulated different tests to use for the two clauses of Section 2(b) of the MFA.[1]   Although some courts have used the *Pireno* test in an MFA reverse preemption analysis, *see e.g.*, *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346 (5th Cir. 2021) (using the *Pireno* test to determine if the state statute was "enacted for the purpose of regulating the business of insurance" under the second prong of the *Fabe* test), the Fourth Circuit has seemingly rejected that approach, *see Ambrose v. Blue Cross & Blue Shield of Virginia, Inc.*, 891 F. Supp. 1153, 1160–61(E.D. Va. 1995) ("[T]o the extent that *Pireno* and *Royal Drug* consider whether the practice being regulated is itself the business of insurance, their analysis is inapplicable in a case controlled by the broader first clause of Section 2(b)"), *aff'd*, 95 F.3d 41 (4th Cir. 1996) ("[F]ully agree[ing] with the district court's reasoning and conclusion" in its MFA analysis).   Indeed, the Fourth Circuit has not used the *Pireno* test in considering whether reverse preemption under the first clause of Section 2(b) of the MFA is applicable.   *See Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000) (quoting *Humana*); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 230 (4th Cir. 2004) (citing *Fabe* and *Humana*); *see also Soyoola v. Oceanus Ins. Co.*, 986 F.

---

[1] The Supreme Court did use the *Pireno* test to support its determination that a state statute was a "law . . . which regulates insurance," and thus saved from ERISA preemption.   *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 373 (2002) ("The McCarran–Ferguson factors confirm our conclusion."); *see also* 29 U.S.C. § 1144 (preempting all state laws "insofar as they . . . relate to any employee benefit plan," but exempting state "law[s] . . . which regulate[] insurance").   However, *Moran* was abrogated less than a year later because the *Pireno* test is not "an essential component" of an ERISA savings-clause analysis, and the Court's use of the *Pireno* test in that context "has misdirected attention, failed to provide clear guidance to lower federal courts, and . . . added little to the relevant analysis."   *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 340–41 (2003).   The Fourth Circuit has also never used *Moran* in determining whether a state statute is saved by MFA reverse preemption.

Supp. 2d 695, 702 (S.D. W. Va. 2013) (Goodwin, J.) (citing *Trigon Heathcare*); *Guardian Flight LLC v. Godfread*, 991 F.3d 916, 922 (8th Cir. 2021) (discussing how the *Fabe* Court "refused [t]o equate laws 'enacted . . . for the purpose of regulating the business of insurance' with the 'business of insurance' itself").

Here, the first clause of § 2(b) of the MFA is applicable because the Court must determine whether the State Statute was "enacted . . . for the purpose of regulating the business of insurance." *See* 15 USC § 1012(b). However, instead of employing *Fabe*'s three-part test, the parties discussed the *Pireno* test in their briefs. As such, the Court will hold a telephonic status conference to address this issue on **June 26, 2023, at 10:00 a.m.** The call-in information for the call is as follows: 304-461-4955, then dial 887 346 68# to be placed on hold pending the start of the call.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 21, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE

5